STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

18-614

STATE OF LOUISIANA

VERSUS

PRINCE RECORD

\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
THIRTY-THIRD JUDICIAL DISTRICT COURT
PARISH OF ALLEN, NO. CR-2015-3272
HONORABLE JOEL G. DAVIS, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

VAN H. KYZAR
JUDGE

\*\*\*\*\*\*\*\*\*\*

Court composed of Billy H. Ezell, Van H. Kyzar, and Jonathan W. Perry, Judges.

CONVICTIONS AFFIRMED;
SENTENCES VACATED; AND
REMANDED FOR RESENTENCING.

**Paula C. Marx**
**Louisiana Appellate Project**
**P.O. Box 82389**
**Lafayette, LA 70598-2389**
**(337) 991-9757**
**COUNSEL FOR DEFENDANT/APPELLANT:**
        **Prince Record**

**Herbert Todd Nesom**
**District Attorney**
**Joe Green**
**Assistant District Attorney**
**Thirty-Third District Court**
**P.O. Box 839**
**Oberlin, LA 70655**
**(337) 639-2641**
**COUNSEL FOR APPELLEE:**
        **State of Louisiana**

**KYZAR, Judge.**

Defendant, Prince Record, appeals his convictions and sentences for simple escape and transactions involving proceeds from drug offenses. For the reasons herein assigned, we affirm the convictions but vacate the sentences imposed and remand to the trial court for resentencing.

## FACTS AND PROCEDURAL HISTORY

Defendant, Prince Record, was convicted by a unanimous jury verdict on May 11, 2017, of simple escape, a violation of La.R.S. 14:110, and transactions involving proceeds of drug offenses, a violation of La.R.S. 40:1041. Defendant was originally charged by way of a bill of information with seven counts. He proceeded to trial on only four of the original seven, being one count of distribution of cocaine, one count of possession with the intent to distribute marijuana, one count of simple escape, and one count of transactions involving proceeds from drug offenses. The State voluntarily dismissed the remaining three offenses prior to trial. Defendant was acquitted of the charges of possession of marijuana with the intent to distribute and distribution of cocaine.

The facts leading to his convictions were detailed in his jury trial through multiple witnesses. The Allen Parish Narcotics Team sent an informant to the residence of Defendant on February 19, 2014, to make an illegal narcotics buy from Defendant in an undercover sting operation. The informant was given $15.00 in marked bills, a $10 bill and a $5 bill. The transaction was recorded via audio and video recording devices. Once completed, agents secured the cocaine purchased by the informant and secured a search warrant for the residence in which Defendant was known to stay and an arrest warrant for his arrest. The following day, on February 20, 2014, the agents executed the warrants. At the residence designated in the warrant, they apprehended Defendant and searched the residence. There, they

found him in possession of $1,300 in cash, including the marked $10 bill used in the undercover buy operation. They also found marijuana, drug paraphernalia, and other indicia of involvement in illegal drug sales. Defendant was arrested and handcuffed during the search, but at some point, with handcuffs on, Defendant escaped and fled the scene. Officers could not catch him at the time. He was not apprehended until a year and a half later.

Following the convictions but prior to sentencing, the State filed a multiple offender bill of information charging that Defendant was a third felony offender, having been previously convicted of two separate narcotics offenses. Defendant was adjudicated a third felony offender on September 13, 2017, and written reasons in support of the finding were signed on September 26, 2017, as per the provisions of La.R.S. 15:529.1(D)(3), as follows:

> The Court finds that the State proved beyond a reasonable doubt that **Prince Record** was convicted in this Court on August 22, 2011 in the matter of State of Louisiana vs. Prince Record, criminal docket number 2008-3126, for the offenses of Possession with the Intent to Distribute Schedule II, to wit: Cocaine, La. R.S. 40:967(A)(1) and Obstruction of Justice, La. R.S. 14:130.1. Further, defendant was convicted on September 14, 20112 [sic] on September 14, 2012[sic], in this Court in the matter entitled State of Louisiana vs. Prince Record, criminal docket number 2012-1434, for Possession with Intent to Distribute a Schedule II Controlled Dangerous Substance, to wit: Cocaine, La. R.S. 40:967(A)(1).

On September 13, 2017, after finding Defendant a third felony offender, the trial court sentenced Defendant to two and a half years for simple escape and to ten years for transactions involving proceeds from drug offenses, with the sentences to run consecutively to each other and consecutively to any other sentences Defendant was serving at the time. Defendant thereafter filed a pro se notice of appeal in docket number 18-85. This court issued an order on February 6, 2018, remanding the matter for an evidentiary hearing to determine whether Defendant was entitled to court-appointed counsel or whether he had made an intelligent and voluntary waiver of

2

counsel after an affirmative showing on the record that the trial court had informed him of the dangers and disadvantages of self-representation. The trial court found Defendant indigent and appointed counsel at a hearing on April 5, 2018. Defendant has now filed the present appeal, seeking to have his convictions vacated, a new trial ordered, or a remand for the purpose of reconsidering his sentences.

Defendant asserts on appeal three assignments of error, the first two of which are intertwined. Defendant first urges that the trial court erred in denying his challenge for cause of a prospective juror, and alternatively, if the error was not preserved for appeal by objection of trial counsel, Defendant asserts that his convictions should be reversed for ineffective assistance of counsel. He also asserts that the trial court erred in denying his motion to reconsider his sentences as being untimely filed.

## ERRORS PATENT

In accordance with La.Code Crim.P. art. 920, all appeals are reviewed for errors patent on the face of the record. After reviewing the record, we find that there are errors patent, one involving the jury deliberation process that we will address first and the other involving sentencing.

### *Replacement of Primary Juror with Alternate*

After the jury retired to deliberate, one of the principal jurors, David Briscoe, became ill and requested to be excused. Because of the nature of the illness, the trial judge granted the request and designated the first alternate juror, Beverly Thomas, to replace Mr. Briscoe. The record does not reflect that the entire jury was brought back to the courtroom during the time of the release of juror Briscoe and the swearing and appointment of alternate juror Thomas to replace him, such that the jury could be instructed to begin its deliberations anew, as prescribed by La.Code Crim.P. art. 789, which states the following regarding the selection and use of alternate jurors:

3

A. The court may direct that not more than six jurors in addition to the regular panel be called and impaneled to sit as alternate jurors. Alternate jurors, in the order in which they are called, shall replace jurors who become unable to perform or disqualified from performing their duties. Alternate jurors shall be drawn in the same manner, shall have the same qualifications, shall be subject to the same examination and challenges for cause, shall take the same oath, and shall have the same functions, powers, facilities, and privileges as the principal jurors. If the court determines that alternate jurors are desirable in the case, the court shall determine the number to be chosen. The regular peremptory challenges allowed by law shall not be used against the alternate jurors. The court shall determine how many additional peremptory challenges shall be allowed, and each defendant shall have an equal number of such challenges. The state shall have as many peremptory challenges as the defense. The additional peremptory challenges may be used only against alternate jurors. Except in capital cases, an alternate juror who does not replace a principal juror may be discharged when the jury retires to consider its verdict.

. . . .

C. If the court, as provided in Paragraph A, replaces a principal juror with an alternate juror after deliberations have begun, the court shall order the jury to begin deliberations anew.

The record supports the trial court's finding that juror Briscoe was unable to serve after the jury retired to deliberate and thus the trial court was authorized by La.Code Crim.P. art. 789 to replace juror Briscoe with alternate juror Thomas. *See State v. Spencer*, 446 So.2d 1197 (La.1984). There is, however, no indication in the record that the trial court instructed the jury to begin deliberations anew as required by La.Code Crim.P. art. 789(C). Although it appears the alternate juror was appointed near the beginning of the deliberation process, the record is unclear as to whether the jury had already begun deliberating as reflected by the trial courts' following statements:

Let the record reflect we will go back into criminal session. We'll continue with the trial in State of Louisiana versus Prince Record, CR-2015-3272. The Court has been advised from the bailiff that Mr. Briscoe, juror number 31, when he was leaving the Courtroom he fell ill and this is just for the record and he was vomiting and was escorted. He tried to continue with deliberations or I guess to begin deliberation and so he was escorted to the restroom by one of the bailiffs. He has continued to throw up, he has soiled his clothes and he's feeling very

4

faint and ill and he does not think that he can continue with deliberations although he tried. So he is requested [sic] from the COURT that he be excused and the COURT will grant that request and order that Alternate #1, Beverly Thomas, be seated and so we will go ahead and bring Ms. Thomas in and swear her in as a juror and then send her to the jury room for deliberations. Could you bring Ms. Thomas in? . . . Okay, Ms. Thomas, please come over here. And you were previously sworn in as an alternate juror. Now we have to swear you in as a juror because you're going to have to go in and participate in deliberations because that other gentlemen [sic] is not able to continue. So please raise your right hand and the clerk will give you your jurors['] oath.

The fourth circuit addressed a similar error in *State v. Clark*, 97-1757 (La.App. 4 Cir. 4/7/99), 732 So.2d 138. Unlike the present case, the issue in *Clark* was assigned as error on appeal. At some point after the jury retired for deliberations in *Clark*, it was discovered that a person chosen for the jury (Ms. Reed) had mistakenly been excused, and a person who had been excused (Ms. Brown) had been seated as a juror. *Clark*, 732 So.2d at 142. Upon discovering the mistake, the State moved to excuse Ms. Brown and replace her with the alternate, Mr. Camp. *Id.* The court agreed with the State's motion and ordered the jury to stop deliberating, if it had already begun to do so. *Id.* When the trial court replaced Ms. Brown with the alternate, Mr. Camp, the trial court ordered the jury "to begin deliberations." *Id.* Clark moved for a mistrial, which the trial court denied. *Id.* On appeal, Clark argued the trial court erred in denying her motion for mistrial "because the excused juror had participated in deliberations up to the point the mistake was realized, and this participation tainted the jury." *Id.* The fourth circuit addressed the error as follows:

> Substitution of the alternate for a properly-seated juror who became unable to sit, even after deliberations had begun, would be a valid course of action if the trial court ordered the jurors to begin deliberations anew with the alternate juror. La.C.Cr.P. art. 789, provides in part that alternate jurors "shall replace jurors who become unable to perform or disqualified from performing their duties", and that if a court replaces a seated juror with an alternate juror after deliberations have begun, the court "**shall** order the jury to begin deliberations **anew**." [Emphasis added.]

5

The presumption of prejudice as a result of an unauthorized communication, contact, or tampering directly or indirectly by a nonjuror with a juror during trial is not conclusive, but the burden rests heavily upon the State to establish, after notice to and hearing of the defendant, that such contact with the juror was harmless to the defendant. *State v. Bibb*, 626 So.2d 913 (La.App. 5 Cir.1993), *writ denied*, 93-3127 (La.9/16/94), 642 So.2d 188, citing *Remmer v. United States*, 347 U.S. 227, 229, 74 S.Ct. 450, 451, 98 L.Ed. 654 (1954); *State v. Marchand*, 362 So.2d 1090, 1092 (La.1978). The State must show that the outside influence was not prejudicial. *Id.*

In *State v. Howard*, 573 So.2d 481 (La.1991), the alternate juror participated in the jury's deliberation, although he did not participate in the vote. The defendant was convicted by a margin of 10-2. In a per curiam opinion, the Supreme Court stated: "The alternate juror's participation in the jury deliberations (as opposed to the alternate juror's mere presence in the jury room) constituted an extraneous influence on the jury. Evidence of this participation established a prima facie case of prejudice to the defendant." The Supreme Court reversed the defendant's conviction and remanded the case for further proceedings.

In *State v. Duplissey*, 550 So.2d 590 (La.1989), the Louisiana Court held that an unauthorized communication to the jury by the bailiff was presumed to be prejudicial when it was about a matter pending before the trial court. The bailiff communicated with the jurors concerning the proper manner for the jurors to conduct deliberations where one juror could not read or write. The Supreme Court found that the State did not show that the unauthorized communication was not prejudicial. The conviction and sentence were reversed, and the case was remanded for a new trial.

In the present case, the incorrect juror who was seated was a juror who was excused by the State. When the defendant moved for a mistrial, the State argued that there was no prejudice to the defendant because the juror had been excused by the State and was acceptable to the defense. Defense counsel, however, pointed out that he did not have an opportunity to object to that prospective juror because the State had already excused her.

The record does not indicate how long after the jury retired that it discovered the discrepancy in the verdict slips. The minute entry indicates only that the jury retired at 4:30 p.m. and returned with a verdict at 5:20 p.m. It does not reflect that a juror was replaced. The record does not show that the incorrectly seated juror did not participate in the deliberations until the error was found. The outside influence of the incorrectly seated juror on the jury is presumed to establish a *prima facie* case of prejudice to the defendant. However, the State may rebut the presumption by showing the defendant was not harmed. Under the circumstances, the State failed to meet its burden of proving that there was no outside influence of the incorrect juror on the jury during

6

deliberations, and that any outside influence was not prejudicial to the defendant.

Further, when the incorrect juror was replaced by the alternate juror, the record does not establish that the trial court ordered the jury to begin the deliberations **anew** as mandated by La.C.Cr.P. art. 789. The only reference in the trial transcript is the statement by the court to the sheriff that he was to replace Ms. Brown with the alternate juror, and once the alternate juror was in place, "then you can tell the jurors to commence deliberations."

Accordingly, the defendant's conviction and sentence are reversed. The case is remanded for a new trial.

*Id.* at 143-44.

Unlike *Clark*, the instant case does not involve any unauthorized communication with the jury as Mr. Briscoe was properly chosen as a juror and became unable to continue to serve only as a result of an illness. According to the record, Ms. Thomas did not participate in deliberations until she was sworn in as a juror. Thus, this case is distinguishable from *Clark* in that the only error that occurred in the present case was the trial court's failure to instruct the jurors to begin deliberations anew. Further, the error in the present case has not been directly raised on appeal, and no motion for mistrial was made in the trial court.

While we can find no case where this error has been recognized as an error patent, this court has, however, addressed a comparable error patent in the trial court's failure to sequester the jury. In *State v. Breaux*, 08-1061, pp. 8-9 (La.App. 3 Cir. 4/1/09), 6 So.3d 982, 988-89, this court stated:

Louisiana Code of Criminal Procedure Article 791(B) provides, "[i]n capital cases, after each juror is sworn he shall be sequestered, unless the state and the defense have jointly moved that the jury not be sequestered." A review of the record does not indicate whether the trial court sequestered the jury or whether the parties moved to not have the jury sequestered. However, Defendant did not object at trial for failure to sequester, and he did not assign this issue on appeal. Nevertheless, this court has recognized this error as an error patent and applied the harmless error analysis. [*State v. Schrader*, 518 So.2d 1024 (La.1988)]; [*State v. Marcantel*, 98-825 (La.App. 3 Cir. 12/22/99), 756 So.2d 366]; *State v. D.T.*, 08-814 (La.App. 3 Cir. 12/11/08), 998 So.2d 1258.

As noted above, the:

> [P]resumption of prejudice for "capital cases" does not
> apply to a "capital case" where the defendant never faced
> the prospect of the death penalty and where counsel failed
> to press the point in the trial court, or object to the lack of
> sequestration. In the absence of actual prejudice, this right
> to sequestration is waived.

*Schrader*, 518 So.2d at 1037. *See also, Marcantel*, 756 So.2d 366.

> In this case, the death penalty could not be imposed, and the State
> did not seek it. Additionally, Defendant fails to assign this error in his
> appeal, and he fails to allege or prove any prejudice suffered by this
> possible error. Accordingly, we conclude that this error is harmless.

Likewise, Defendant in the present case did not assert any objection as to the

alternate juror in the trial court, does not assign any such issue on appeal, and does

not allege any prejudice resulting from the issue. Further, we find no prejudice to

Defendant here. The minutes of court from May 11, 2018, reflect that the jury retired

to deliberate at 6:02 p.m. and that at 6:10 p.m. the court was advised that primary

juror Briscoe "fell ill, began to vomit, could not continue with deliberations, and has

requested to be excused" which request was granted. The trial court thereafter swore

alternate juror Thomas in and sent her to deliberate with the remaining jurors, also

at 6:10 p.m. Thus, the original jury had only been in the jury room to begin

deliberations for a total of eight minutes during which time juror Briscoe was ill,

vomiting, and could not continue. Alternate juror Thomas was not in the jury room

participating during those eight minutes. At 7:26 p.m. the jury returned its verdict

of not guilty of counts one and two, and guilty of count three, simple escape, and

count four, transactions involving proceeds from drug offenses.

We find that any error that occurred by the failure to instruct the jury to begin

deliberations anew to be harmless error. This court has previously determined that

the improper replacement of a primary juror with an alternate juror, for reasons

unrelated to illness, disability, or death, was structural in nature and not subject to a

harmless error analysis. In the present case, the trial court properly allowed the replacement of the primary juror for severe illness, which prohibited him from deliberating. The record further shows only a lapse of eight minutes between the original jury's withdrawal to deliberate and the replacement of the juror. It is equally clear that the alternate juror had not previously participated in deliberations, and there was no objection by either the State or Defendant.[1]

## Sentencing

In addition, we find that the trial court applied the wrong version of La.R.S. 15:529.1 when sentencing Defendant. The crimes for which Defendant was convicted occurred in 2014.[2] The trial court, in sentencing here, applied the habitual

---

[1] See *State v. Tennors*, 05-538 (La.App. 3 Cir. 2/15/06), 923 So.2d 823.

[2] The habitual offender statute in effect at the time Defendant committed the offenses for which he was adjudicated a third habitual offender provided, in pertinent part:

(3) If the third felony is such that upon a first conviction, the offender would be punishable by imprisonment for any term less than his natural life then:

(a) The person shall be sentenced to imprisonment for a determinate term not less than two-thirds of the longest possible sentence for the conviction and not more than twice the longest possible sentence prescribed for a first conviction; or

(b) If the third felony and the two prior felonies are felonies defined as a crime of violence under R.S. 14:2(B), a sex offense as defined in R.S. 15:540 et seq. when the victim is under the age of eighteen at the time of commission of the offense, or as a violation of the Uniform Controlled Dangerous Substances Law punishable by imprisonment for ten years or more, or any other crimes punishable by imprisonment for twelve years or more, or any combination of such crimes, the person shall be imprisoned for the remainder of his natural life, without benefit of parole, probation, or suspension of sentence.

Under this penalty provision, Defendant's sentencing range for simple escape, third habitual offender, was a minimum of 3.3 years imprisonment and a maximum of ten years imprisonment. La.R.S. 14:110(B)(4). Thus, Defendant's sentence of 2.5 years for simple escape, third habitual offender, would be illegally lenient. Applying this penalty provision to the offense of a transaction involving drug proceeds, third habitual offender, Defendant would have faced a mandatory life sentence - both the sentence being enhanced (transaction involving drug proceeds) and the two prior felonies (possession with the intent to distribute cocaine committed on January 30, 2007 and possession with the intent to distribute cocaine committed on May 11, 2010) were violations of the Uniform Controlled Dangerous Substances Law punishable by ten years or more. Thus, under the habitual offender penalty provision in effect at the time Defendant committed a transaction involving drug proceeds, Defendant's sentence of 10 years would be illegally lenient.

9

offender statute as amended by 2017 La. Acts No. 257.[3] The amendment provided that the change "shall have prospective application only to offenders whose convictions became final on or after November 1, 2017." *Id.* § 2. In *State v. Purvis,* 17-1013 (La.App. 3 Cir. 4/18/18), 244 So.3d 496 and *State v. Williams,* 17-1753 (La. 6/15/18), 245 So.3d 1042 (per curiam), the new version of the statute as amended in 2017 was applied to sentences enhanced for crimes occurring before 2017 as convictions not yet final after the effective date of the new law. However, effective August 1, 2018, the legislature amended the habitual offender statute to specifically state that the habitual offender penalty provision in effect on the commission date of the offense being enhanced is the penalty provision that must be applied. La.R.S. 15:529.1(K). In a recent case, the second circuit found the 2018 amendment was a curative provision. *State v. Edden,* 52,288 (La.App. 2 Cir. 11/14/18), 259 So.3d 1196. Additionally, the second circuit stated:

> Because the 2018 amendments are procedural and this decision is being decided after August 1, 2018, we find that Edden was sentenced under the proper habitual offender law in effect in 2014, the date of the underlying offense.

*Id.* __.

Both the second and first circuits have found the 2018 amendment effectively abrogated *State v. Purvis,* 244 So.3d 496 and *State v. Williams,* 245 So.3d 1042. In *State v. Floyd,* 52,183, p. 7 (La.App. 2 Cir. 8/15/18), 254 So.3d 38, 43, the court

---

[3] Under the amended version, Defendant's sentence for simple escape, third habitual offender, is subject to a minimum term of imprisonment of 2.5 years and a maximum term of imprisonment of 5 years. Thus, Defendant's sentence of 2.5 years is legal. As for Defendant's sentence for a transaction involving drug proceeds, third habitual offender, the November 1, 2017 amendment drastically reduced Defendant's sentencing exposure by removing persons with a current and prior felony conviction under the Uniform Controlled Dangerous Substance law from the group of persons subject to a life sentence. Under the amended version, Defendant's sentence for a transaction involving drug proceeds, third habitual offender, is subject to a minimum term of imprisonment of five years and a maximum term of imprisonment of 20 years. Thus, Defendant's sentence of 10 years for a transaction involving drug proceeds, third habitual offender, is a legal sentence under the November 2017 amendment.

10

stated "the legislature clearly stated its intent to diminish the penalties for certain habitual offenders, but equally clearly stated its intent not to reopen or relitigate cases that arose before the effective date" and that "jurisprudence also holds that the version of the habitual offender law in effect at the time of the crime is the version that applies; amended provisions apply only to offenses committed after their effective dates." Consequently, despite the 2017 ameliorative changes to the habitual offender statute, the first and second circuits have applied the habitual offender penalty provision in effect when the offense was committed, as directed by the 2018 amendment and the Legislative mandate to do so. We agree that the version of La.R.S. 15:529.1 at the time of the commission of the offenses, February 19 and 20, 2014, applies to Defendant's convictions and sentences.

For the reasons specified herein, we vacate the sentences imposed and remand to the trial court with instructions to resentence Defendant, applying the version of the law at the time of the offense being subject to sentence enhancement herein.

***Assignment of Error No. 1: Challenge for Cause***

In his first assignment of error, Defendant alleges the trial court erred when it denied his challenge for cause of juror Amber Monk. He contends the trial court abused its discretion by denying the challenge because of Ms. Monk's "past and present connections to law enforcement and trial witnesses."

> [Louisiana Code of Criminal Procedure Article] 800(A) requires an objection at the time of the ruling, which denies a challenge for cause, in order to preserve the claim for appellate review. Article 800(A) also mandates that the nature of the objection and the grounds therefor be stated at the time of the objection. With respect to that provision, this court has made clear:
>
>> Our law is also settled that an objection need not be raised by incantation. "It is sufficient that a party, at the time the ruling or order of the court is made or sought, makes known to the court the action which he desires the court to take, or of his objections to the action of the court, and the grounds therefor." C.Cr.P. 841; *State v. Boutte*,

11

384 So.2d 773 (La. 1980). The requirement that objection be raised contemporaneously is not meant to be inflexible, but is designed "to promote judicial efficiency and to insure fair play." *State v. Lee*, 346 So.2d 682, 684 (La. 1977). Article 800 should not be read to differ in this respect from Article 841.

*State v. Vanderpool*, 493 So.2d 574, 575 (La. 1986).

*State v. Clark*, 12-508, p. 99 (La. 12/19/16), 220 So.3d 583, 663, *cert. granted, judgment vacated on other grounds*, __ U.S. __, 138 S.Ct. 2671 (2018).

The *Clark* court found the defendant could not assign error to the denial of a challenge for cause as he failed to lodge a contemporaneous objection to the trial court's denial. Likewise, in *State v. Anderson*, 06-2987, p. 28 (La. 9/9/08), 996 So.2d 973, 996, *cert. denied*, 556 U.S. 1165, 129 S.Ct. 1906 (2009), our supreme court cited La.Code Crim.P. art. 800 and stated, "A defendant must object at the time of the ruling on the refusal to sustain a challenge for cause of a prospective juror."

However, this court has not always followed that rule. In *State v. Queen*, 17-599 (La.App. 3 Cir. 1/4/18), 237 So.3d 547, *writ denied*, 18-211 (La. 11/20/18), 257 So.3d 186, this court determined that a defendant's failure to object to the denial of challenges for cause did not prohibit review of the issue on appeal. This court quoted *State v. Pinion*, 06-2346, p. 10 (La. 10/26/07), 968 So.2d 131, 136, noting, "In jury selection, counsel satisfies the requirements of Louisiana's contemporaneous objection rule by stating his grounds for a cause challenge and then by removing the juror with one of his remaining peremptory challenges when the court declines to excuse the juror for cause." *Queen*, 237 So.3d at 563.

Our supreme court has not consistently determined whether a party must lodge an objection to the denial of a challenge for cause in order to preserve the issue for appeal. Thus, while we could follow *Clark*, 220 So.3d 583, and *Anderson*, 996 So.2d 973, and hold that Defendant here may not complain of Ms. Monk's presence on the jury because he did not specifically object to the trial court's denial of his challenge

12

for cause, we choose instead to follow the directive in *Pinion*, 968 So.2d 131, and review the denial of the challenge for cause. Although counsel did not lodge an objection, counsel did note his reasons for his challenge for cause of juror Monk and, thereafter, exercised a peremptory challenge when the challenge for cause was denied.

A party may challenge a juror for cause on grounds that he "is not impartial" or that a "relationship, whether by blood, marriage, employment, friendship, or enmity between the juror and the defendant, the person injured by the offense, the district attorney, or defense counsel, is such that it is reasonable to conclude that it would influence the juror in arriving at a verdict[.]" La.Code Crim.P. art. 797(2) and (3).

> A challenge for cause should be granted even when a prospective juror declares his ability to remain impartial if the juror's responses, as a whole, reveal facts from which bias, prejudice, or inability to render judgment according to law may be reasonably inferred. *State v. Hallal*, 557 So.2d 1388, 1389-90 (La. 1990). Prejudice is presumed when a challenge for cause is denied erroneously by a trial court and the defendant ultimately exhausts his peremptory challenges. *State v. Robertson*, 92-2660, pp. 3-4 (La. 1/14/94), 630 So.2d 1278, 1280 (citing *State v. Ross*, 623 So.2d 643, 644 (La. 1993)).

*Clark*, 220 So.3d at 663 (footnote omitted).

> A trial judge is vested with broad discretion in ruling on challenges for cause, and such a ruling is subject to reversal only when a review of the entire *voir dire* reveals the judge abused his discretion. *Robertson*, 630 So.2d at 1281. The trial judge's refusal to excuse a prospective juror on the ground he is not impartial is not an abuse of discretion where, after further inquiry or instruction (frequently called "rehabilitation"), the prospective juror has demonstrated a willingness and ability to decide the case impartially according to the law and the evidence. *Id.*

*State v. Dotson*, 16-473, p. 5 (La. 10/18/17), 234 So.3d 34, 39.

"In summary, where all peremptory challenges have been used . . . a defendant need only demonstrate the erroneous denial of a challenge for cause to establish reversible error warranting reversal of a conviction and sentence." *Id.* at 38.

13

Clearly, La. C.Cr.P. art. 797(2) does not require that a prospective juror state with absolute certainty that he/she cannot be impartial in order to be removed for cause. However, in the absence of such a statement, the trial court's denial of a challenge for cause will not be reversed if, on review of the entire *voir dire* examination, the prospective juror demonstrates a willingness and ability to decide the case impartially according to the law and evidence. *Passman*, 345 So.2d at 880. Reversal is appropriate only where it appears, upon review of the *voir dire* examination as a whole, that the trial judge's exercise of that discretion has been arbitrary or unreasonable, resulting in prejudice to the accused. *Id.*; see *Dorsey*, 10-0216 at 28, 74 So.3d at 625; *State v. Lee*, 93-2810 (La. 5/23/94), 637 So.2d 102, 108. This standard of review is utilized "because the trial judge has the benefit of seeing the facial expressions and hearing the vocal intonations of the members of the jury venire as they respond to questions by the parties' attorneys." *Lee*, 93-2810 at 9, 637 So.2d at 108. "Such expressions and intonations are not readily apparent at the appellate level where review is based on a cold record." *Id.* As noted in *State v. Miller*, 99-0192 (La. 9/6/00), 776 So.2d 396, because of the "complicated and oftentimes daunting" task faced by a trial court in deciding "challenges for cause of prospective jurors who give equivocal . . . responses during *voir dire*," "an appellate court should accord great deference to the [trial] court's ruling on a challenge for cause, which is necessarily based, in part, on the court's personal observations during questioning." *Id.*, 99-0192 at 14, 776 So.2d at 405-06.

*Dotson*, 234 So.3d at 45.

The *Dotson* court found that the trial court's determination of the juror's competency was not arbitrary or unreasonable and did not result in the "prejudicial injury of the defendant in obtaining a fair and impartial trial." *Id.* Thus, the appellate court erred by reversing the trial court's denial of the challenge for cause.

According to *Clark*, 220 So.3d 583, a party is limited on appeal to arguing the grounds he stated in his challenge for cause. At trial, the *Clark* defendant failed to argue a potential juror's "unspecified familial relationship to law enforcement officers was a basis for challenging her[.]" *Id.* at 667. Thus, he did not properly preserve that argument for appeal and was limited on appeal to the concerns he had expressed at trial.

Here, Defendant's counsel expressed concern about Ms. Monk. There and in further colloquy with the trial judge and the State's counsel, that concern addressed

14

Ms. Monk's friendship with Brandon Johnson, of the Oakdale Police Department, who testified at trial, with Johnson's wife, and with their family. However, on appeal, Defendant further complains of Ms. Monk's association to law enforcement in addition to her friendship with the Johnsons. As per the rational set forth in *Clark*, 220 So.3d 583, Defendant did not preserve any argument about Ms. Monk's association with law enforcement at trial. Thus, this court will consider only Defendant's argument about Ms. Monk's friendship with the Johnsons in determining whether the trial court erred in denying his challenge for cause concerning her.

During *voir dire*, Ms. Monk said she and Detective Johnson were good friends, and she and Detective Johnson's wife were best friends. Ms. Monk stated that she was able to separate that friendship, listen to the evidence, apply the facts to the evidence, and give Defendant a fair and impartial trial. She stated she would not give his testimony any more credit than anyone else's or "take [his] side just because of what he says." She considered herself "a fair person."

Ms. Monk had known Detective Johnson's wife about six years at the time of trial; they were best friends. She considered Mrs. Johnson more like a sister, more like family than best friends. Ms. Monk did not think her feelings about Mrs. Johnson, her family, or Detective Johnson would affect her decision making.

The trial court found Ms. Monk could be fair and impartial and denied Defendant's challenge for cause. Defense counsel stated no objection to that decision. Defense counsel did not initially use a peremptory challenge on Ms. Monk and thereafter exercised two more peremptory challenges, before he used one on Ms. Monk, and he used one more from that venire group before additional potential jurors were questioned. Both of his remaining peremptory challenges were exercised against potential jurors called from the last venire group. Defendant has

15

not identified any other juror for which he would have used a peremptory challenge had he not used the challenge to exclude Ms. Monk.

> Prospective jurors' associations with law enforcement agencies or personnel require careful scrutiny by the trial judge. *State v. Ford*, 489 So.2d 1250, 1259 (La.1986), *vacated on other grounds*, 479 U.S. 1077, 107 S.Ct. 1272, 94 L.Ed.2d 133 (1987), *on remand*, 503 So.2d 1009 (La.1987). If bias or prejudice may be reasonably attributed to the relationship, a juror should be excused for cause. *State v. Lewis*, 391 So.2d 1156 (La.1980).

*State v. Alexander*, 620 So.2d 1166, 1167 (La.1993) (per curiam).

Ms. Monk never expressed any doubt and never wavered about her ability to be a fair and impartial juror. She never expressed any bias or prejudice. Defense counsel never brought out any way that Ms. Monk's relationship with the Johnson family would impact her jury service. Ms. Monk maintained she could be fair and impartial, and Defendant failed to show she could not. Accordingly, we find that the trial court did not err by denying Defendant's cause challenge concerning Ms. Monk.

### *Assignment of Error No. 2: Ineffective Assistance of Counsel*

Defendant next contends, should this court find review of the denial of the challenge for cause of Amber Monk is precluded by counsel's failure to object on all grounds and for failure to object to the denial of the challenge for cause, counsel's failure constitutes ineffective assistance of counsel. This assignment is rendered moot by our finding that the trial court did not err in its denial of the challenge for cause as to juror Amber Monk. To the extent that our determination may raise any additional claim of ineffective assistance of counsel, such is more appropriately addressed in an application for post-conviction relief, where an evidentiary hearing can be conducted in the trial court. *State in the Interest of A.B.*, 09-870 (La.App. 3 Cir. 12/9/09), 25 So.3d 1012.

16

*Assignment of Error No. 3: Reconsideration of Sentence*

Defendant contends the trial court erred when it denied Defendant's request for reconsideration of his sentence as untimely because it was filed thirty days after sentencing. Having previously vacated the sentences imposed on Defendant and remanding for resentencing, with instructions, this assignment of error is rendered moot.

### DECREE

For the reasons set forth herein, we affirm the convictions of Defendant, Prince Record, but vacate the sentences imposed, and remand to the trial court for resentencing to apply the provisions of La.R.S. 15:529.1 in effect at the time of the commission of the offense.

**CONVICTIONS AFFIRMED, SENTENCES VACATED, AND REMANDED FOR RESENTENCING**